UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF KENTUCKY
NORTHERN DIVISION at COVINGTON


CIVIL ACTION NO. 08-60-GWU


JUDY DOVER,                                                    PLAINTIFF,


VS.                          **MEMORANDUM OPINION**


MICHAEL J. ASTRUE,
COMMISSIONER OF SOCIAL SECURITY,                    DEFENDANT.


## INTRODUCTION

The plaintiff brought this action to obtain judicial review of an administrative

denial of her applications for Disability Insurance Benefits (DIB) and Supplemental

Security Income (SSI).  The appeal is currently before the court on cross-motions

for summary judgment.


## APPLICABLE LAW

The Sixth Circuit Court of Appeals has set out the steps applicable to judicial

review of Social Security disability benefit cases:

   1.     Is the claimant currently engaged in substantial gainful activity?
          If yes, the claimant is not disabled.  If no, proceed to Step 2.
          See 20 C.F.R. 404.1520(b), 416.920(b).

   2.     Does the claimant have any medically determinable physical
          or mental impairment(s)?  If yes, proceed to Step 3.  If no, the
          claimant is not disabled.  See 20 C.F.R. 404.1508, 416.908.

   3.     Does the claimant have any severe impairment(s)--i.e., any
          impairment(s) significantly limiting the claimant's physical or
          mental ability to do basic work activities?  If yes, proceed to

1

Step 4.  If no, the claimant is not disabled.  <u>See</u> 20 C.F.R. 404.1520(c), 404.1521, 416.920(c), 461.921.

4.      Can the claimant's severe impairment(s) be expected to result in death or last for a continuous period of at least 12 months? If yes, proceed to Step 5.  If no, the claimant is not disabled. <u>See</u> 20 C.F.R. 404.920(d), 416.920(d).

5.      Does the claimant have any impairment or combination of impairments meeting or equaling in severity an impairment listed in 20 C.F.R. Part 404, Subpart P, Appendix 1 (Listing of Impairments)?  If yes, the claimant is disabled.  If no, proceed to Step 6.  <u>See</u> 20 C.F.R. 404.1520(d), 404.1526(a), 416.920(d), 416.926(a).

6.      Can the claimant, despite his impairment(s), considering his residual functional capacity and the physical and mental demands of the work he has done in the past, still perform this kind of past relevant work?  If yes, the claimant was not disabled.  If no, proceed to Step 7.  <u>See</u> 20 C.F.R. 404.1520(e), 416.920(e).

7.      Can the claimant, despite his impairment(s), considering his residual functional capacity, age, education, and past work experience, do other work--i.e., any other substantial gainful activity which exists in the national economy?  If yes, the claimant is not disabled.  <u>See</u> 20 C.F.R. 404.1505(a), 404.1520(f)(1), 416.905(a), 416.920(f)(1).

<u>Garner v. Heckler</u>, 745 F.2d 383, 387 (6th Cir. 1984).

Applying this analysis, it must be remembered that the principles pertinent to the judicial review of administrative agency action apply.  Review of the Commissioner's decision is limited in scope to determining whether the findings of fact made are supported by substantial evidence.  <u>Jones v. Secretary of Health and Human Services</u>, 945 F.2d 1365, 1368-1369 (6th Cir. 1991).  This "substantial

evidence" is "such evidence as a reasonable mind shall accept as adequate to support a conclusion;" it is based on the record as a whole and must take into account whatever in the record fairly detracts from its weight.  <u>Garner</u>, 745 F.2d at 387.

One of the detracting factors in the administrative decision may be the fact that the Commissioner has improperly failed to accord greater weight to a treating physician than to a doctor to whom the plaintiff was sent for the purpose of gathering information against his disability claim.  <u>Bowie v. Secretary</u>, 679 F.2d 654, 656 (6th Cir. 1982).  This presumes, of course, that the treating physician's opinion is based on objective medical findings.  <u>Cf. Houston v. Secretary of Health and Human Services</u>, 736 F.2d 365, 367 (6th Cir. 1984); <u>King v. Heckler</u>, 742 F.2d 968, 973 (6th Cir. 1984).  Opinions of disability from a treating physician are binding on the trier of fact only if they are not contradicted by substantial evidence to the contrary.  <u>Hardaway v. Secretary</u>, 823 F.2d 922 (6th Cir. 1987).  These have long been well-settled principles within the Circuit.  <u>Jones</u>, 945 F.2d at 1370.

Another point to keep in mind is the standard by which the Commissioner may assess allegations of pain.  Consideration should be given to all the plaintiff's symptoms including pain, and the extent to which signs and findings confirm these symptoms.  20 C.F.R. § 404.1529 (1991).  However, in evaluating a claimant's allegations of disabling pain:

First, we examine whether there is objective medical evidence of an underlying medical condition.  If there is, we then examine:  (1) whether objective medical evidence confirms the severity of the alleged pain arising from the condition; or (2) whether the objectively established medical condition is of such a severity that it can reasonably be expected to produce the alleged disabling pain.

Duncan v. Secretary of Health and Human Services, 801 F.2d 847, 853 (6th Cir. 1986).

Another issue concerns the effect of proof that an impairment may be remedied by treatment.  The Sixth Circuit has held that such an impairment will not serve as a basis for the ultimate finding of disability.  Harris v. Secretary of Health and Human Services, 756 F.2d 431, 436 n.2 (6th Cir. 1984).  However, the same result does not follow if the record is devoid of any evidence that the plaintiff would have regained his residual capacity for work if he had followed his doctor's instructions to do something or if the instructions were merely recommendations.  Id.  Accord, Johnson v. Secretary of Health and Human Services, 794 F.2d 1106, 1113 (6th Cir. 1986).

In reviewing the record, the Court must work with the medical evidence before it, despite the plaintiff's claims that he was unable to afford extensive medical work-ups.  Gooch v. Secretary of Health and Human Services, 833 F.2d 589, 592 (6th Cir. 1987).  Further, a failure to seek treatment for a period of time may be a factor to be considered against the plaintiff, Hale v. Secretary of Health and Human Services, 816 F.2d 1078, 1082 (6th Cir. 1987), unless a claimant simply has no way

4

to afford or obtain treatment to remedy his condition, <u>McKnight v. Sullivan</u>, 927 F.2d 241, 242 (6th Cir. 1990).

Additional information concerning the specific steps in the test is in order.

Step six refers to the ability to return to one's past relevant category of work. <u>Studaway v. Secretary</u>, 815 F.2d 1074, 1076 (6th Cir. 1987).  The plaintiff is said to make out a <u>prima facie</u> case by proving that he or she is unable to return to work. <u>Cf. Lashley v. Secretary of Health and Human Services</u>, 708 F.2d 1048, 1053 (6th Cir. 1983).   However, both 20 C.F.R. § 416.965(a) and 20 C.F.R. § 404.1563 provide that an individual with only off-and-on work experience is considered to have had no work experience at all.  Thus, jobs held for only a brief tenure may not form the basis of the Commissioner's decision that the plaintiff has not made out its case.  <u>Id.</u> at 1053.

Once the case is made, however, if the Commissioner has failed to properly prove that there is work in the national economy which the plaintiff can perform, then an award of benefits may, under certain circumstances, be had. <u>E.g.</u>, <u>Faucher v. Secretary of Health and Human Services</u>, 17 F.3d 171 (6th Cir. 1994).  One of the ways for the Commissioner to perform this task is through the use of the medical vocational guidelines which appear at 20 C.F.R. Part 404, Subpart P, Appendix 2 and analyze factors such as residual functional capacity, age, education and work experience.

One of the residual functional capacity levels used in the guidelines, called "light" level work, involves lifting no more than twenty pounds at a time with frequent lifting or carrying of objects weighing up to ten pounds; a job is listed in this category if it encompasses a great deal of walking or standing, or when it involves sitting most of the time with some pushing and pulling of arm or leg controls; by definition, a person capable of this level of activity must have the ability to do substantially all these activities.  20 C.F.R. § 404.1567(b).  "Sedentary work" is defined as having the capacity to lift no more than ten pounds at a time and occasionally lift or carry small articles and an occasional amount of walking and standing.  20 C.F.R. § 404.1567(a), 416.967(a).

However, when a claimant suffers from an impairment "that significantly diminishes his capacity to work, but does not manifest itself as a limitation on strength, for example, where a claimant suffers from a mental illness . . . manipulative restrictions . . . or heightened sensitivity to environmental contaminants . . . rote application of the grid [guidelines] is inappropriate . . ." Abbott v. Sullivan, 905 F.2d 918, 926 (6th Cir. 1990).  If this non-exertional impairment is significant, the Commissioner may still use the rules as a framework for decision-making, 20 C.F.R. Part 404, Subpart P, Appendix 2, Rule 200.00(e); however, merely using the term "framework" in the text of the decision is insufficient, if a fair reading of the record reveals that the agency relied entirely on the grid.  Ibid.

In such cases, the agency may be required to consult a vocational specialist. Damron v. Secretary, 778 F.2d 279, 282 (6th Cir. 1985). Even then, substantial evidence to support the Commissioner's decision may be produced through reliance on this expert testimony only if the hypothetical question given to the expert accurately portrays the plaintiff's physical and mental impairments. Varley v. Secretary of Health and Human Services, 820 F.2d 777 (6th Cir. 1987).

## DISCUSSION

The plaintiff, Judy Dover, was found by an Administrative Law Judge (ALJ) to have "severe" impairments consisting of chronic fatigue syndrome and fibromyalgia. (Tr. 26). Nevertheless, based in part on the testimony of a Medical Expert (ME) and a Vocational Expert (VE), the ALJ determined that Mrs. Dover retained the residual functional capacity to perform a significant number of sedentary level jobs existing in the economy, and therefore was not entitled to benefits. (Tr. 27-33). The Appeals Council declined to review, and this action followed.

At the administrative hearing, the ALJ asked the VE whether an individual of the plaintiff's age, education, and work experience could perform any jobs if she were limited to sedentary level exertion with a requirement of sitting for most of an eight-hour day, no more than occasional climbing of ladders, ropes and scaffolds and a need to avoid exposure to hazards, and if she were limited to performing

simple, routine, repetitive work with no strict production requirements.  (Tr. 337).

The VE responded that there were jobs that such a person could perform, and

proceeded to give the numbers in which they existed in the "local" and national

economies.[1]

On appeal, this court must determine whether the administrative decision is

supported by substantial evidence.  Given the particular factual circumstances of

this case, the court concludes that there is substantial evidence to support the ALJ's

decision.

Mrs. Dover alleged disability beginning in January, 2004 due to

mononucleosis and chronic fatigue syndrome.  (Tr. 88).   She testified that she

started feeling very tired after a bout of mononucleosis in late 2003 and was unable

to continue her job as the manager of a jewelry store.  (Tr. 295-6).  She stated that

her muscle and joint pain started a couple of months after she had mononucleosis,

and currently she had pain every day almost throughout her body, although the

severity of the pain would vary.  (Tr. 305).  She always felt exhausted and described

herself as "bedridden" for the most part, but was capable of some activities such as

babysitting for several hours three days a week,[2] and doing some shopping and

---

[1]The term "local" was not defined.

[2]Mrs. Dover maintained that she did not have to exert herself while watching the pre-schoolers, other than making a sandwich for their lunch.  (Tr. 313).

housecleaning.  (Tr. 307, 310, 313).  Her husband testified that she was not functional the majority of the time, although she could take care of her personal needs, and he had to do most of the cooking and laundry.  (Tr. 316-17).

One of the principal difficulties with the plaintiff's case is that her primary treatment was by a physician's assistant, Jim Ravencraft, rather than by a medical doctor.  Office notes show that Mr. Ravencraft evaluated the plaintiff for mononucleosis and fatigue in late 2003 and early 2004 (Tr. 194, 202).  She was referred for a number of objective lab tests, many of which indicate that the referring physician was James R. Schrand (e.g., Tr. 198), but the plaintiff stated at the hearing that she had only seen Dr. Schrand once or twice, and she did not believe she had ever seen him for "this," presumably referring to her complaints of fatigue and fibromyalgia (Tr. 320).  In any event, although Mr. Ravencraft indicated that Mrs. Dover had improved enough to return to work, at least part-time, as of March, 2004, he dictated a letter on July 9, 2004, signed by Dr. Mark Sander, stating that the plaintiff had had a "significant bout" with chronic fatigue syndrome secondary to an Epstein-Barr virus.  (Tr. 166).  As a result, she was having persistent fever, fatigue, and chronic myalgias and arthralgias which made it difficult for her to sit or stand for extended periods of time and caused her to tire extremely easily when she attempted to perform her normal activities of daily living and "household duties." The letter recommends that she be considered for disability and states that she is

not capable of gainful employment under any circumstances.  (Tr. 166-7).  There are further office notes from Mr. Ravencraft indicating continued complaints of fatigue, with multiple tender points on examination.  (E.g., Tr. 251, 262, 273).  Mr. Ravencraft completed two residual functional capacity forms, on October 1, 2004, and October 31, 2005, limiting the plaintiff to less than full-time sitting, standing, and walking in addition to other restrictions.  (Tr. 237-9, 265-9).  The second assessment was signed "Jim Ravencraft PAC for Dr. M. Sander M.D."  (Tr. 270).

As the defendant points out, the applicable regulations provide that a physician's assistant is not an acceptable medical source.  20 C.F.R. §§ 404.1513; 416.913 (2007).  The plaintiff asserts on appeal that the ALJ committed error by not accepting the opinion of her treating physicians, but Social Security Ruling (SSR) 06-03p states that only "acceptable medical sources" can be considered treating sources whose medical opinions may be entitled to controlling weight.  SSR 06-03p, p. 2.  It is not clear from the evidence to what extent Dr. Sander had a treating relationship with the plaintiff.  Although many of the office notes might be initialed, the plaintiff herself testified that she almost always saw Mr. Ravencraft.  Dr. Sander did sign the July 9, 2004 letter, but, even assuming for the sake of argument that he was a treating source, the letter speaks in conclusory terms of inability to perform gainful employment, rather than of functional restrictions.  (Tr. 167).  In other words, it describes a vocational conclusion outside the physician's area of expertise, and

the ALJ could reasonably have declined to give it controlling weight for that reason alone.

Sections 404.1513 and 416.913 do provide that a physician's assistant is an "other source" whose opinion should be considered to show the severity of an impairment and how it affects the plaintiff's ability to work.  The plaintiff argues that a physician's assistant is a highly qualified individual, and that in view of the fact that Mr. Ravencraft treated the plaintiff regularly for several years, his opinion should be given the same weight as that of a medical doctor.  Once again, even giving the plaintiff the benefit of the doubt, there is evidence to support the countervailing view given by the ALJ that the treatment records did not establish restrictions as severe as the plaintiff claimed, and citing her daily activities as further evidence to the same effect.

The plaintiff did have additional testing by physicians, including two evaluations in May, 2004 by Dr. Allison Kelly, a specialist in infectious diseases.  Dr. Kelly's treatment was mainly concerned with determining whether the plaintiff's complaints of fatigue and pain were related to a treatable infection, but she concluded that, while she was concerned that Mrs. Dover "may have chronic fatigue with fibromyalgia . . . there is no clear infectious etiology of those disorders."  (Tr. 148).  At most, this evidence goes to a diagnosis rather than to showing functional restrictions greater than found by the ALJ.  Mrs. Dover was later evaluated by Dr.

Liza Varghese, who found symmetrical tender points consistent with a diagnosis of fibromyalgia. (Tr. 242, 247). She suggested treatment including walking, stretching, aquatic therapy, relaxation techniques, physical therapy, and the possibility of anti-depressants, muscle relaxers, and anti-inflammatory medications. (Tr. 242). The plaintiff did not keep the follow-up appointment. (Tr. 245). There is no evidence that the plaintiff attempted any of these suggestions, and no functional limitations were given.

The ME, Dr. Thomas A. Saladin, testified that objective evidence was generally weak in these kinds of cases, but there had been an attempt to rule out differential diagnoses, and he felt that the plaintiff's complaints were fairly consistent and she did have some positive laboratory tests such as an elevated sedimentation rate and serology suggesting the Epstein-Barr virus. (Tr. 321, 323-4). The ME's opinion was that diagnosing fibromyalgia by exclusion, see Preston v. Secretary of Health and Human Services, 854 F.2d 815, 819-20 (6th Cir. 1988), was not realistic because too many tests would be required. (Tr. 329-31). However, although the gist of the ME's testimony appears to be that he thought the plaintiff's complaints were reasonably consistent with the evidence, the ALJ was not required to accept his opinion regarding credibility, and Dr. Saladin also did not testify regarding

functional restrictions.[3]  As a result, the ALJ could reasonably have relied on the only opinions in the transcript from medical sources, who were state agency reviewers who opined that Mrs. Dover could perform "light" level exertion, with occasional climbing of ladders, ropes, and scaffolds and a need to avoid concentrated exposure to hazards such as machinery and heights.  (Tr. 159-63, 220-5).  The VE testified that, with these restrictions, Mrs. Dover could perform her past relevant work as a jewelry store manager and lead manager for a census survey team.  (Tr. 336-7).  Limiting the plaintiff to sedentary level exertion, as previously described, would still not preclude the performance of other work, in the VE's opinion.  (Tr. 337).  Accordingly, the ALJ's determination is supported by substantial evidence.

The decision will be affirmed.

This the 26th day of November, 2008.

**Signed By:**

**_G. Wix Unthank_**

**United States Senior Judge**

---

[3]The ME did testify that none of the Commissioner's Listings of Impairment would apply.  (Tr. 328).  His only remarks on exertional capacity were that Mrs. Dover could probably lift 20 or 50 pounds but the question was what would happen to her afterwards. (Tr. 328-9).